# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JAMES McHUGH CONSTRUCTION CO.,

        Plaintiff,

        v.

INTERNATIONAL FIDELITY INSURANCE CO.,

        Defendant.

Case No. 14-cv-02399

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff James McHugh Construction Company sued Defendant International Fidelity Insurance Co. (IFIC) for breach of contract in the Circuit Court of Cook County on March 20, 2014. [1-1] at 4, 9.[1] IFIC removed the case to this Court on April 3, 2014. [1].

The following motions are before the Court: (1) IFIC's second motion for summary judgment on the grounds that McHugh's claim is time-barred [125]; (2) McHugh's cross-motion for summary judgment on the grounds that IFIC waived the statute of limitations defense or is estopped from asserting it [135]; and (3) the parties' cross-motions for partial summary judgment on the validity of certain damages claimed by McHugh [131, 139].

---

[1] In a prior ruling, this Court identified the date of filing as March 21, 2014. [81]. The Cook County clerk's stamp on the Complaint, however, establishes that it was actually filed on March 20, 2014. [1-1] at 4. This adjustment does not affect the Court's analysis on this motion or the previous motion.

As explained below, this Court denies the parties' motions for summary judgment because factual issues remain in dispute, including the date upon which McHugh's claim accrued and the sequence of events that McHugh argues estop IFIC's limitations defense. For similar reasons, this Court denies in part the parties' cross-motions for partial summary judgment on the scope of damages, but grants Defendant's motion as to the undisputed amount owed to its principal and thus credited to Defendant in any subsequent calculation of damages.

## I.    Background

An abridged history of this case follows below. This Court incorporates by reference, and presumes familiarity with, its opinion denying IFIC's previous motion for summary judgment [81], and provides additional facts here as needed.[2]

McHugh bases its suit upon the performance bonds IFIC issued for McHugh's subcontract with Builders Architectural Products (BAP). [1-1] at 9. McHugh was the general contractor for the construction of two condominium buildings in Chicago, Illinois, and subcontracted with BAP to install windows, doors, and related elements. DSOF ¶ 5; [61-9]. The subcontract obligated BAP to correct any "fault or defect" in its work at its own expense on seven days' notice; gave McHugh the right to complete BAP's work in the event of a default; and required BAP to secure performance bonds. [61-9] at 9, 10. IFIC issued two performance bonds on BAP's subcontract in 2006 and 2007, each naming IFIC as the surety, BAP as the

---

[2] Additional facts are taken from the parties' Local Rule 56.1 statements. "DSOF" refers to IFIC's statement of undisputed facts [127], and "PSAF" refers to McHugh's statement of additional undisputed facts [138]. References to additional filings are by docket number.

principal, and McHugh as the obligee.  [61-10] at 3; [61-11] at 2.  Both bonds incorporate BAP's subcontract with McHugh by reference.  *Id*.

Throughout construction of the condominiums, BAP repeatedly failed to meet deadlines and its work was often flawed.  Defects in windows and terrace doors surfaced as early as 2007 and continued to emerge until BAP left the job in September 2010.[3]  DSOF ¶ 35; [64] ¶¶ 11, 20–27, 33–44.  McHugh kept IFIC apprised of BAP's shortcomings during this period.  [64] ¶¶ 20, 22, 25–27, 44, 47.  While BAP remained on the job, it continued consulting with McHugh and the condominium's developer and performing corrective work to address the defects.  DSOF ¶ 21; [127-3] at 14, 27; [138-1] at 80–82.

On December 31, 2009, McHugh wrote to BAP about its "continuing failure to correct" its defective work.  [127-19].  If BAP did not complete the corrective work within seven days, as required by the subcontract, McHugh would "proceed to retain other firms to complete this work" and deduct those costs from "any amounts due to BAP."  *Id*.  On January 5, 2010—five days after writing to BAP—McHugh told IFIC that BAP was "in default of their Subcontract Obligations to correct defective work."  [127-20].  If BAP did not "promptly correct this defective work," McHugh and the condominium owner (the Owner) would have "no choice but to complete the work."  *Id*.  The January 5 letter noted that BAP had "continually delayed completion of the corrective work," and was now initiating a lien action on the condominiums.  *Id*.  As a result, McHugh stated: "We anticipate that the remaining amounts due BAP are

---

[3] The parties previously identified BAP's departure date as October 2010, [81] at 13, but this Court adopts the uncontested representation in the defendant's present statement of facts, *see* DSOF ¶ 35; PSAF (response indicating DSOF ¶ 35 is uncontroverted).

insufficient to both correct the defective work and pay our legal costs to remove any lien that may be filed and, therefore, we advising you [sic] that a claim will be filed against your firm under the surety bond you provided for the project." *Id*.

IFIC responded on January 7, writing McHugh that they had "referred this matter" to BAP. [127-38] at 2. IFIC stated: "We anticipate that you and our Principal will work together to resolve any outstanding issues. Unless the Surety hears otherwise, it will assume that all outstanding issues will be resolved between you and our Principal." *Id*.

Although the exact chronology of BAP's corrective work remains vague, it seems that, at this point, BAP remained on the job and continued repairs. The record does not indicate that any other firm was engaged at this time. On January 26, BAP attended a meeting about additional defects with the condominium developer, the Owner, McHugh, and a parts supplier. DSOF ¶¶ 21, 23, 28. In February, McHugh again complained to BAP about the speed of its corrective work, but as of March 3, BAP was still conducting repairs. DSOF ¶¶ 24, 29. Based upon representations by McHugh and BAP, BAP appears to have continued corrective work into the summer of 2010. PSAF ¶¶ 3, 6–9; [127-2] at 34–35; [138-1] at 79–80.

In July 2010, McHugh informed IFIC that BAP's proposed schedule for further repairs was unacceptable to the Owner, and McHugh would hire another subcontractor to complete the work. DSOF ¶¶ 33, 34; PSAF ¶ 11. But BAP remained on the project and McHugh did not hire a replacement subcontractor until

BAP left in September 2010. DSOF ¶¶ 35, 36. McHugh and the new subcontractor completed the necessary corrective work in late 2012. *Id.* ¶ 37.

On April 12, 2013, McHugh submitted a claim to IFIC for the cost of completing BAP's work, totaling $966,338.41. [64] ¶ 55. In May, IFIC requested additional documents, which McHugh provided in September 2013; IFIC then denied the claim in January 2014. [61] ¶ 42; [64] ¶¶ 56, 57. On March 20, 2014, McHugh sued IFIC in the Circuit Court of Cook County. [1-1] at 4. In March 2015, while this suit was pending, McHugh entered into a $135,000 settlement agreement with the Owner for costs and claims relating to BAP's default. [133-11].

In September 2016, this Court denied IFIC's previous motion for summary judgment based upon a statute of limitations defense. [81]. In that ruling, this Court held that a four-year statute of limitations applied to McHugh's claim, pursuant to 736 ILCS 5/13-214(a), so that if McHugh's claim accrued before March 20, 2010, it would be time-barred. *Id.* at 7. The Court, however, could not determine as a matter of law when McHugh's claim accrued, and so denied the motion. *Id.* at 19.

IFIC renews its motion based upon information obtained in the March 2017 deposition of Suzanne Browne, a former project manager for McHugh. [127-42] at 4. Browne prepared the documents that McHugh submitted to IFIC to support its claim in September 2013. [126] at 1–2; [127-42] at 4. IFIC asserts that this deposition contextualizes McHugh's January 5 letter, establishing that McHugh knew of its injury well before March 2010.

In her deposition, Browne discussed her work organizing McHugh's claim documentation in the spring and summer of 2013. [127-42] at 4–7. She testified that McHugh's paperwork included documentation of damages beginning on January 4, 2010. *Id.* at 9, 10. The documents included time sheets associated with the costs of assessing and correcting BAP's work, "based upon an initial observation on January 4, 2010." *Id.* at 5, 7, 8–9; *see also* [127-44] at 3 (summary included in the materials prepared by Browne). The records assembled by Browne support McHugh's present calculation of damages. [126] at 6–7; [127-42] at 8–9.

McHugh's cross-motion for summary judgment argues that IFIC has either waived its statute of limitations defense by asserting a time-barred counterclaim, or is estopped from asserting the defense because McHugh reasonably relied upon BAP's remedial efforts until it left the job in September 2010. [137] at 6, 12–13.

The parties also filed cross-motions for partial summary judgment on the limited issue of the validity of certain damages claimed by McHugh. [131, 139].

## II.  Legal Standard

A motion for summary judgment can be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The motion will be granted only if, viewing the record in the light most

favorable to the nonmoving party, no jury could reasonably find in the nonmoving party's favor. *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). Rule 56(a) also permits summary judgment on part of a claim or defense, subject to the same standard. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 606 (7th Cir. 2015); Fed. R. Civ. P. 56(a).

## III.    Analysis

IFIC's second motion for summary judgment once more argues that McHugh's claim is barred by the four-year statute of limitations on construction actions, pursuant to 735 ILCS 5/13-214(a). That limit began to run when McHugh's claims against BAP accrued. *See* § 13-214(a); P.A. 85-887 § 1, eff. Nov. 6, 1987. Because McHugh initiated this suit on March 20, 2014, the suit is barred if McHugh's claims against BAP accrued by March 20, 2010.

McHugh's cross-motion for summary judgment argues that IFIC waived the statute of limitations defense by invoking a "saving" provision to shield its own counterclaim from being time-barred, which prevents IFIC from invoking a similar limitation against McHugh. [137] at 5–6. Because IFIC is no longer asserting a counterclaim [159, 160], this argument is moot. In the alternative, McHugh argues that BAP's assurances and repairs in the spring and summer of 2010 induced McHugh to rely on BAP's continued progress, such that IFIC is equitably estopped from invoking the statute of limitations.

The parties' cross-motions for partial summary judgment are limited to the question of whether certain damages claimed by McHugh are compensable, or whether they represent costs of third-parties not covered by the bond. [131, 139].

7

This Court will address each issue in turn.

## A. The Accrual Date for McHugh's Claims Against BAP Cannot be Resolved at Summary Judgment

As to IFIC's second motion for summary judgment, this Court again concludes that, with the significant number of material facts remaining in dispute, it cannot determine as a matter of law that McHugh's claim accrued prior to March 20, 2010.

To briefly revisit the "discovery rule" governing McHugh's claim: under § 13-214(a), a construction-related action must be brought within four years of the date that the plaintiff "knew or should reasonably have known" of the injurious act or omission. This rule delays the running of the limitations period until the injured party: (1) "knows or reasonably should know of his injury"; and (2) "knows or reasonably should know that it was wrongfully caused." *DuPage County v. Graham, Anderson, Probst & White*, 485 N.E.2d 1076, 1080 (Ill. 1985) (internal quotation marks omitted). A person knows that an injury "is wrongfully caused when they possess enough information about the injury to alert a reasonable person to the need for further inquiries to determine if the cause of injury is actionable at law." *LaSalle Bank v. Skidmore, Owens & Merrill*, 635 N.E.2d 564, 567 (Ill. App. Ct. 1994). At summary judgment, a trial court can only make this determination, as a matter of law, when "the facts known by the plaintiff" are not in dispute and "only one conclusion can be drawn" from them; and thus, a jury usually identifies the "discovery date" after a trial. *Id.*

The question here is the same question this Court faced a year ago when addressing IFIC's first motion for summary judgment: it is unclear when McHugh was on notice that it was "wrongfully" injured by BAP. Even though undisputed portions of the record indicate that McHugh had problems with BAP's work throughout BAP's time on the condominium project, the record also shows that BAP remained on the job, actively undertaking repairs, months into 2010. DSOF ¶¶ 7-35, 24, 28, 29; PSAF ¶¶ 3, 6–9; [127-2] at 34–35; [138-1] at 79–80. The timeline of those repairs remains vague, increasing the difficulty of determining exactly what McHugh knew and when. McHugh's senior project manager stated that "BAP would address the issues when they came up. Sometimes successfully, sometimes not successfully. It was just an ongoing process." [127-3] at 14. BAP's vice president described BAP's corrective work as continuing into the summer of 2010. [138-1] at 80. He also noted that construction typically involves some corrective work, and it wasn't until the scope of the defects became clear that anything appeared out of the ordinary. *Id.* Moreover, McHugh's senior vice president stated that the scope was only clear to McHugh at some point between April and June 2010. [127-2] at 34–35.

On this record, McHugh might have been on notice of a wrongful injury before March 20, 2010, in light of its continued problems with BAP and its threat to sue IFIC in January. On the other hand, given that some amount of delay or defect is expected in construction, and that BAP continued corrective work pursuant to its contract at least through the spring of 2010, it is equally possible that a "reasonable

person" would not have seen the "need for further inquiries" into BAP's conduct until some later date. *LaSalle*, 635 N.E.2d at 567. McHugh might reasonably have believed it was not wrongfully injured until April 2010, when the scope of defects emerged, or September 2010, when BAP walked off the job with necessary repairs incomplete.

McHugh's situation resembles that of the plaintiff county in *DuPage*. In that case, the plaintiff knew of significant moisture problems in its administrative building, but received explanations that were not actionable and attempted a series of repairs based upon those explanations. *DuPage County*, 485 N.E.2d at 178, 1080. Like here, such a combination of uncertainty and sequential repairs might have been "adequate to keep a reasonable person from investigating further," and thus it remained a determination that the Illinois Supreme Court left to the factfinder. *Id*. at 1080–81. Similarly, in *LaSalle*, the plaintiff knew of heating problems in its building soon after construction was completed, but received conflicting explanations and attempted various repairs. 635 N.E.2d at 566. Where actionable and non-actionable theories are available, summary judgment on the discovery date is inappropriate. *Id*. at 569.

The facts emphasized by IFIC do not change this analysis. IFIC argues that Suzanne Browne's deposition, establishing that McHugh believes its damages commenced on January 4, 2010, combined with the January 5 letter threatening IFIC with suit, proves that McHugh knew it was "wrongfully" injured by January 5, 2010. [126] at 10. That is a reasonable conclusion, but it is not the only one.

The January 5 letter indicates that McHugh would file a claim only if the corrective work was not completed and if the costs of McHugh taking on that work and addressing BAP's latent lien action exceeded the amount remaining on BAP's contract. [127-20]. But BAP apparently resumed its corrective work soon after and McHugh did not take over until September. The record confirms the conditional nature of the letter (despite McHugh's statement that BAP was already "in default"), because on January 5, BAP, in fact, had two more days to address defects under the seven-day notice provision of its contract. *Id.*; [61-9] at 10.

Browne's deposition likewise fails to resolve the issue as a matter of law. Browne's only connection to the construction project was her work assembling documents in support of the claim McHugh eventually made against IFIC in 2013. [127-42] at 4, 10. She conducted this work from spring to September 2013. *Id.* at 4. The fact that, in 2013, McHugh decided to include in its calculation of damages costs incurred in January 2010 sheds no light on what McHugh knew or reasonably should have known *in 2010.* Obviously, the parties do not dispute that McHugh believed itself "wrongfully" injured by 2013. To prevail on summary judgment, however, IFIC needs to prove that the only reasonable conclusion is that McHugh knew it was "wrongfully" injured before March 20, 2010. *LaSalle*, 635 N.E. 2d at 567. This it has failed to do.

The cases IFIC cites in support of summary judgment are unavailing—all involve situations with more definite information about the plaintiff's injury available at a specific date. *See Johnston v. Tri-City Blacktop, Inc.*, 577 N.E.2d 529,

530, 532 (Ill. App. Ct. 1991) (blacktop that normally lasts 10–15 years showed unusual, obvious deterioration before discovery date); *Freeport Memorial Hospital v. Lankton, Ziegel, Terry & Assoc.*, 525 N.E.2d 194, 197–98 (Ill. App. Ct. 1988) (plaintiffs possessed investigative report identifying abnormal structural conditions that indicated defendants' liability); *People ex rel. Skinner v. Graham*, 524 N.E.2d 642, 650 (Ill. App. Ct. 1988) (plaintiffs knew of "irremediable" defects and failure to conduct repairs prior to discovery date). In each case, construction work ceased and the actionable defendants were no longer on the job, in clear contrast to the status of BAP's work in March 2010. Here, a jury could conclude that it was reasonable for McHugh to believe that BAP would correct its defective work in timely manner, as is typical in the construction industry and not necessarily actionable.

In short, determining the date of discovery "is generally a question of fact inappropriate for summary judgment," and such is the case here. *LaSalle*, 635 N.E. 2d at 902–03. IFIC's motion for summary judgment is denied.

## B. Equitable Estoppel Cannot Be Applied to IFIC's Limitations Defense at Summary Judgment

In its cross-motion, McHugh seeks to bar application of the statute of limitations to its claim on a theory of equitable estoppel. [137] at 12. McHugh argues that it relied on BAP's promised repairs to its detriment, and therefore cannot be held to the limitations period. *Id*. As should be clear from the preceding discussion, much remains in doubt about the nature and timing of BAP's remedial work in 2010, and these doubts doom McHugh's cross-motion for summary judgment.

Equitable estoppel is appropriate where: (1) the plaintiff "reasonably relied on the defendant's conduct in forbearing suit"; and (2) suffered a detriment as a result. *Senior Hous., Inc. v. Nakawatase, Rutkowski, Wins & Yi, Inc.*, 549 N.E.2d 604, 608 (Ill. App. Ct. 1989). In a few instances, Illinois courts have equitably estopped a statute of limitations defense in construction actions based upon the plaintiff's reliance on the defendant's repair work. In *AXIA, Inc. v I.C. Harbour Construction Co.,* the plaintiff's contractor attempted to repair serious leaks in the building over a four-year period. 501 N.E.2d 1339, 1346 (Ill. App. Ct. 1986). Because the contractor took "affirmative steps" over that "continuing" period, in "apparent acknowledgement of its responsibility under the contract," the plaintiff reasonably relied on the contractor's efforts at correction, "the natural effect of which was to forebear legal action." *Id*. at 1347. Similarly, in *Senior Housing*, the plaintiff reasonably relied upon its architectural and engineering firm's efforts at repair, based on the firm's "representations that remedial measures would be taken" as needed, according to its contractual obligations. 549 N.E.2d at 608. In *Freeport Memorial Hospital*, an Illinois appellate court read these cases to require that the vendor have "insisted that the repairs will correct the problem" for reliance to be reasonable. 525 N.E.2d at 198.

Ostensibly, these cases may apply here: BAP continued repairs into 2010, taking affirmative steps to fulfill its contractual obligation, and possibly leaving McHugh with the reasonable expectation that the work would be completed in a reasonable time and fashion. On a motion for summary judgment, however, the

facts must be construed in favor of the nonmovant, IFIC. Considering BAP's 2010 repairs within the context of its repeated failures to meet deadlines; the continued recurrence of defects in BAP's work; and McHugh's repeated claims that BAP was "in default"; this Court cannot conclude that, as a matter of law, it was reasonable for McHugh to rely on BAP's efforts at repair. *Cf. AXIA*, 501 N.E.2d at 1347. The record fails to establish that BAP's conduct could have reasonably "lulled" McHugh "into a false sense of security," and thus justify estoppel. *Freeport*, 525 N.E.2d at 198. Construing the facts in the light most favorable to IFIC, reliance on BAP's promises of repair may have been unreasonable, and the Court cannot determine otherwise at summary judgment. *See McDonald*, 821 F.3d at 888.

## C. McHugh's Damages Cannot be Established at Summary Judgment

The parties' cross-motions for partial summary judgment contest the validity of certain damages claimed by McHugh. IFIC asks this Court to rule that IFIC's bond does not cover any damages claimed by McHugh that were actually incurred by the Owner. [132] at 7–8, 10. In turn, McHugh argues that third-party beneficiaries—such as the Owner—are not precluded from recovering on the bond, [141] at 7, but admits that the Owner "has no rights under the bond," [145] at 2. McHugh characterizes its 2015 settlement with the Owner as a direct loss covered by the bonds, [145] at 2, 5, but then tries to leave a door open to claim additional costs incurred by the Owner, over and above the settlement amount, [153] at 1–2. McHugh, however, offers no evidence of any outstanding claims or costs unaddressed by the settlement, and its senior vice president stated that McHugh

made no payments to the Owner beyond that settlement. [145], [153], [133-1] at 35. The record contains no other costs or claims by McHugh.

The record does make clear, however, that IFIC seeks to cap any damages arising from the Owner's claims and costs at $135,000—the amount of McHugh's settlement with the Owner. [132] at 8. In doing so, IFIC tacitly admits that the settlement itself remains compensable under the bonds, subject to proof that it truly represents costs relating to BAP's default, rather than any other dispute between McHugh and the Owner. *Id*. In the other corner, McHugh seeks to protect its right to reimbursement for the $135,000 settlement without giving up the right to claim other damages it might prove up at a later date. *See* [153] at 1–2. The parties' mutual invocation of future proofs demonstrate the existence of material issues of fact that remain unresolved, and thus, both motions must be denied.

Even though the parties invite this Court to resolve the indemnification and third-party issues here at the summary judgment stage, there is no need to do so now. Suffice to say, under the plain terms of the bond, material factual issues remain as to the source and validity of McHugh's claimed damages, as well as the bond's primary purpose. *See Anderson*, 477 U.S. at 248.

In Illinois, a performance bond constitutes a contract subject to principles of contract interpretation, with a strong emphasis on the text of the agreement. *Solai & Cameron, Inc. v. Plainfield Cmty. Consol. Sch. Dist. No. 22*, 871 N.E.2d 944, 953 (Ill. App. Ct. 2007). "A surety is not bound beyond the express terms of the performance bond and, when interpreting a performance bond, the court must look

solely to the unambiguous language of the bond as evidence of the intentions of the parties." *Id.*

Here, the terms of IFIC's bond are simple: McHugh is indemnified for "any and all loss, damage, and expense" that McHugh incurred "by reason of" BAP's failure to perform its obligations under the subcontract. [61-10]. Relying upon this broad language, McHugh cites to Illinois cases upholding broad coverage, albeit in simple indemnity agreements rather than construction bonds. *See Water Tower Realty Co. v. Fordham 25 E. Superior, LLC,* 936 N.E.2d 1127, 1133–34 (Ill. App. Ct. 2010). Nevertheless, given the state of the factual record, this Court can neither confirm nor exclude McHugh's claimed damages at summary judgment.

To recover under the bond, McHugh must prove some loss or damage caused by BAP's default on the subcontract. *See* [61-10]. The $135,000 settlement McHugh paid the Owner appears to have been paid "by reason of" BAP's initial default, which would satisfy those requirements. [133-11]. But both parties acknowledge that factual issues remain as to what that $135,000 represents. [132] at 8; [145] at 2. That issue, therefore, requires resolution at trial. *See Anderson*, 477 U.S. at 248.

As for any additional claims by the Owner, conflicts arise in the record as to what those claims might be, *compare* [132] at 3; [133-1] at 35 *with* [153] at 1–2, 6, and whether they are covered under the bond. In Illinois, the bond's "primary object and purpose," as well as the parties' intentions in making the bond, determine the viability of any third-party claims based upon its provisions. *See Bd. of Ed. of Cmty. High Sch. Dist. No. 99, DuPage C'ty v. Hartford Acc. and Indem. Co.,*

504 N.E.2d 1000, 1005 (Ill. App. Ct. 1987). To date, no evidence exists as to the bond's "primary object and purpose." As a result, this issue is also inappropriate for resolution at summary judgment. *See Anderson*, 477 U.S. at 248.

This Court, however, can resolve one issue before trial. The parties do not dispute that, whatever the ultimate calculation of damages is, IFIC should be credited $147,639.48. This is the amount that remained unpaid on BAP's contract, [127-32] at 2, which is properly deducted from any damages assessed under the bond, *see, e.g.*, *Castricone v. Michaud*, 223 Ill. App. 138, 139 (Ill. App. Ct. 1991) (explaining that damages on construction contracts are generally "the difference between the total cost of" completion and "the contract price"). Because McHugh agrees that this amount is owed, [145] at 2, and offers no evidence or arguments to the contrary, "no genuine dispute of material fact exists," *Carroll v. Lynch*, 698 F.3d 561, 566 (7th Cir. 2012). Without expressing any opinion as to the final sum against which the contract balance may be credited, this Court finds that BAP's subcontract balance in the amount of $147,639.48 is owed to IFIC, and grants partial summary judgment as to that part of Defendant's motion. *Hotel 71 Mezz Lender*, 778 F.3d at 606; Fed. R. Civ. P. 56(a).

**IV. Conclusion**

The parties' cross-motions for summary judgment [125, 135] are denied. The parties' cross-motions for partial summary judgment [131, 139] are granted in part and denied in part.

Dated: October 10, 2017

Entered:

John Robert Blakey
United States District Judge